# 2001 DTA 176

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**
**PANEL I**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

PEDRO DIAZ FUENTES
Peticionario

Núm. KLCE-01-00408

San Juan, Puerto Rico, a 23 de mayo de 2001

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

López Vilanova, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Pedro Díaz Fuentes recurre de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, que ordenó un nuevo juicio en su caso, toda vez que el juez que lo presidía renunció y las partes no estipulan su sustitución.

La posición de la defensa es, en síntesis, que no procede un nuevo juicio, ni tampoco procede la sustitución del juez, que lo que procede es la desestimación.

Evaluado el escrito a la luz de la Regla 186 de las de Procedimiento Criminal, ordenamos la comparecencia del Procurador General. Este compareció, por lo que estamos en posición de resolver.

### I

Los hechos del caso ante nos, no están en controversia. Los procedimientos contra el aquí peticionario se iniciaron por Tribunal de Derecho ante el Honorable Fernando Torres Ramírez. Después del desfile de la prueba de cargo, el juez Torres Ramírez renunció a su cargo. Se dio un nuevo señalamiento al caso. El aquí peticionario presentó una moción de absolución perentoria el 3 de enero de 2001. Con relación a esta última moción, el 10 de enero de 2001, el Tribunal, presidido por el juez Manuel Acevedo, dictó orden para referir la moción de absolución perentoria a la Sala 502 - que preside el Juez Administrador del Tribunal.

El 23 de enero de 2001, el Tribunal, presidido por el Honorable Luis Rivera Román, convocó a las partes para discutir el curso a seguir en el caso, de conformidad con lo dispuesto en la Regla 186 de las de Procedimiento Criminal.

La abogada del aquí peticionario alega a la página 3 de su escrito de *certiorari* que *"argumentó en corte abierta que el Tribunal estaba impedido de continuar el proceso y/o celebrar un nuevo juicio, toda vez que la Regla 186 no era aplicable al caso de autos y planteó la posibilidad de presentar defensa de doble exposición"*. Escrito de *Certiorari*, pág. 3, énfasis nuestro.

Posteriormente, la defensa argumentó por escrito. En el mismo expuso, entre otros, *"que cualquier otro Juez*

*Superior está impedido de continuar con el caso".* Entre los fundamentos expuestos, alegó *"[q]ue el caso de epígrafe se estaba ventilando por Tribunal de Derecho y no ha mediado estipulación alguna para aceptar la sustitución del juez para continuar o iniciar un nuevo juicio".*

Alegó, además, que en la eventualidad de que el tribunal ordene un nuevo juicio, planteará la defensa de doble exposición. (Anejo XIII). El 7 de marzo de 2001, se dictó la Resolución aquí recurrida.

En su razonado y fundamentado dictamen, el foro de instancia hizo constar que *"no hay estipulación de las partes para que un juez sustituto continúe el proceso."* Ante ello, y de conformidad con la Regla 186 de las de Procedimiento Criminal, ordenó la celebración de un nuevo juicio. No erró al así resolver.

## II

Nuestro ordenamiento procesal vigente, a través de la Regla 186, regula el procedimiento a seguir en las situaciones en que un juez que preside un juicio cesa en su cargo. Examinémosla.

*"REGLA 186. INHABILIDAD DEL JUEZ*

*(a) Durante el juicio. Si después de comenzado el juicio, y antes del veredicto o fallo, el juez ante quien fuera juzgado el acusado estuviere impedido de continuar con el juicio por razón de muerte, enfermedad u otra inhabilidad o por haber cesado en el cargo, cualquier otro juez de igual categoría en funciones o asignado al tribunal, podrá desempeñar dichos deberes, siempre y cuando certifique, dentro de un tiempo razonable a partir de su nombramiento, que se ha familiarizado con el expediente y récord del caso.*

*(b) Después del veredicto o fallo de culpabilidad. Si por razón de haber cesado en el cargo, muerte, enfermedad u otra inhabilidad, el juez ante quien fuera juzgado el acusado estuviere impedido de desempeñar los deberes del tribunal después del veredicto o fallo de culpabilidad, cualquier otro juez en funciones o asignado al tribunal, podrá desempeñar dichos deberes.*

*(c) Casos por jurado y tribunal de derecho. La sustitución a que se refiere el inciso (a) de esta regla, sólo podrá ser efectuada en aquellos casos que se estuvieren ventilando ante jurado. Por estipulación de las partes, podrá haber sustitución de juez antes de mediar fallo, en aquellos casos que se estén ventilando por tribunal de derecho.*

*(d) Nombramiento de juez sustituto. El juez sustituto deberá ser nombrado por el juez administrador del tribunal al cual pertenecía el primer juez, o, en su defecto, por el Juez Presidente del Tribunal Supremo de Puerto Rico, dentro de dos (2) días de recibir notificación de inhabilidad del juez.*

*(e) Autoridad del juez sustituto. El juez sustituto mantendrá el mismo poder, autoridad y jurisdicción en el caso como si hubiese comenzado ante él mismo.*

*(f) Deber del secretario. En aquellos tribunales en donde hay asignado un sólo juez, el secretario del tribunal, inmediatamente que conociere de la inhabilidad del juez, deberá:*

*(1) Notificar inmediatamente al Administrador de los Tribunales, y al Juez Presidente del Tribunal Supremo.*

*(2) Citar a las partes para un señalamiento que en ningún caso podrá ser menor de 10 días, ni mayor de 15 días.*

*(g) Nuevo juicio.*

*(1) Si el juez sustituto quedare convencido de que no puede continuar desempeñando los deberes del anterior juez, podrá discrecionalmente conceder un nuevo juicio.*

*(2) La imposibilidad no atribuible al acusado, de cumplir con los trámites dispuestos en esta regla, sería motivo para conceder un nuevo juicio."* (Énfasis suplido.)

Obsérvese que la regla contempla dos etapas en que puede ocurrir la sustitución: durante el juicio o después de rendido el fallo. Nuestro Tribunal Supremo examinó la Regla aquí en controversia en el caso de *Pueblo v. Nadal Mejías*, 137 D.P.R. 432 (1994). En dicho caso, la sustitución del juez surgió después de emitido fallo.

En lo referente a la sustitución del juez en la etapa anterior al veredicto, el Tribunal Supremo expresó lo siguiente:

*"Unicamente nos arroja luz el examen a la Exposición de Motivos de la Ley Núm. 145 de 23 de julio de 1974, Leyes de Puerto Rico, pág. 712, la cual enmendó la Regla 186 de Procedimiento Criminal, supra, para permitir la sustitución del juez en la etapa anterior al veredicto y establecer el proceso que ha de seguirse para la sustitución. A esos efectos, se estableció que debido a que la regla era limitativa y no proveía para los casos en que el juez se inhabilitara durante el juicio, era necesario 'ampliar el ámbito de la regla para permitir la sustitución en etapas previas al veredicto o fallo y delinear claramente el procedimiento a seguirse". Exposición de Motivos de la Ley Núm. 145 de 23 de julio de 1974, Leyes de Puerto Rico, pág. 713. Surge, con meridiana claridad, que el legislador quiso ampliar el ámbito de aplicación de la regla para permitir la sustitución no sólo para los procedimientos posteriores al juicio, sino incluso para continuar con el juicio ya comenzado por otro juez. Esta enmienda demuestra la flexibilidad que el legislador le quiso impartir a la regla, de manera que se pueda utilizar en cualquier etapa de los procedimientos." Pueblo v. Nadal, supra,* a la pág. 436.

Nuestra Regla 186 proviene de la Regla 25 de las Reglas de Procedimiento Criminal Federal. La misma dispone:

*"Rule 25. Judge; Disability.*

*(a) DURING TRIAL. If by reason of death, sickness or other disability, the judge before whom a jury trial has commenced in unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial.*

*(b) AFTER VERDICT OR FINDING OF GUILT. If by reason of absence, death, sickness or other disability, the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if that judge is satisfied that a judge who did not preside at the trial cannot perform those duties or that it is appropriate for any other reason, that judge may grant a new trial."* [Adopted 1946; last amended 1987.]

Obsérvese que el inciso (a) se refiere al juez que está presidiendo un juicio por jurado y el inciso (b) se refiere a incapacidad del juez después del veredicto:

*"Rule 25 (a) is specifically addressed to the disability of a judge 'before whom a jury trial has commenced,' while subdivision (b) is addressed to disability 'after a verdict or finding of guilt. In cases where trial by jury has been waived (see Ch. 623, Trial by Jury or by the Court), questions as to the propriety of substitution can arise*

*when the original judge becomes disabled before final disposition. In United States v. Sundstrom, the Second Circuit faced 'the rather unusual question of whether a sucesor judge can enter a conviction after the original judge in a non-jury trial had made detailed factual findings, but had left the verdict open in order to consider an essentially legal defense.' The court took the position that 'the intent behind Rule 25 was to perpetuate the traditional dichotomy between 'law' and 'fact', and thus authorize a sucesor judge to decide purely legal matters, while reserving to the original judge any questions of fact.' Because the defense at issue 'presented only questions of law - based solely on legal records and regulations,' the Second Circuit held that the sucesor judge had properly entered a judgment of conviction cumulatively based on the successor's own findings and those of the original judge. It is worth noting that the government conceded that had the original judge died before stating the factual conclusions, a mistrial would have been required. The principles expressed in Sundstrom have been approved by several other circuits in the context of civil litigation."* (Moores, *Federal Practice* 31), volume 25, sec. 625.05 (2).

Obsérvese, además, que la regla federal se refiere a incapacidad del juez surgida en juicios por jurado. Sin embargo, toda vez que un acusado puede renunciar a su derecho constitucional a juicio por jurado, se ha resuelto que el acusado puede consentir a la sustitución del juez. En ausencia de este consentimiento, procederá un *"mistrial"* y un nuevo juicio.

*"Rule 25 (a) poses no substantial constituional problem if the defendant consents to substitution of judges during trial. The reasoning of the Second Circuit still has vitality if defendant does not consent. In the absence of consent, it would seem that Rule 25(a) cannot be validly applied, and that the death or disability of the judge reguires that a mistrial be granted."* Wright, *Federal Practice and Procedure: Criminal 3*, sec. 392.

*Contrario a la Regla Federal, nuestra Regla 186 provee para la sustitución del juez en juicios que se ventilen ante tribunal de derecho. Sin embargo, a diferencia de la sustitución del juez en juicios por jurado, en los juicios por tribunal de derecho se requiere estipulación para tal sustitución. Esto es, a menos que las partes estipulen que el juicio continúe ante otro juez, no podrá haber sustitución. ¿Cuál es la solución en ausencia de estipulación? La defensa entiende que debe ser la desestimación de los cargos. Tal pretensión es insostenible. La propia regla provee que ante la imposibilidad de cumplir con el trámite que provee la Regla, será motivo para conceder un nuevo juicio."*

El peticionario sostiene que el estado no ha justificado que el juicio este inconcluso. Plantea como sigue:

*"Los dos criterios fundamentales para justificar el juicio inconcluso sin efecto de impedimento para un nuevo juicio son dos: (1) Que el acusado solicita o se opone a la terminación del juicio; (2) Que había necesidad manifiesta para el juicio inconcluso.*

*Las razones por las que en el caso de autos, se puso fin al proceso sin absolución, ni convicción, no pueden ser imputadas al acusado de epígrafe donde no medió solicitud ni actuación alguna de la defensa a esos fines. La única razón para que el proceso no concluyera lo fue la renuncia a la judicatura por parte del Juez que presidía el proceso. El peticionario tampoco se opuso a la conclusión del juicio.*

*Durante el juicio no se observaron irregularidades y/o errores de derecho que justifiquen por parte del Honorable Tribunal paralizar el proceso y ordenar un nuevo juicio. Tampoco había los elementos necesarios para lo que la jurisprudencia federal ha llamado 'necesidad manifiesta' para la terminación de un juicio.*

*Por 'necesidad manifiesta' para la terminación de un juicio, se entiende aquella situación bajo la cual una convicción seria con toda probabilidad revocada en virtud de la irregularidad presentada, o bajo la cual la*

*terminación del juicio es inconsistente con los fines que la justicia persigue. La referida doctrina se ha desarrollado en el ámbito federal a partir de Downun v. United States, 372 US 734 (1963); United States v. Jorn, 400 US 410 (1973), y Burks v. United States, 137 US 1 (1978).*

*En el caso de epígrafe, no existen los elementos para establecer esa 'necesidad manifiesta' para un juicio inconcluso, ya sea por irregularidad que impidiera un veredicto justo e imparcial, o ya por que se coloca al Ministerio Público en lo que la jurisprudencia federal ha llamado 'no win situation' en el sentido de que cualquier convicción sería revocada en apelación por el efecto y magnitud de las irregularidad incurrida. Véase Derecho Procesal de Puerto Rico y Estados Unidos, Ernesto Chiesa Aponte, Tomo II, Cap. 16.*

*Permitir un segundo juicio, pondría al Ministerio Público con la ventaja de presentar su prueba dos veces, de manera que podría mejorar la prueba y testimonios previamente presentados ante la consideración del Honorable Tribunal dando oportunidad en dos ocasiones distintas por los mismos hechos a rebatir la presunción de inocencia cuando durante el juicio celebrado se le ofreció un proceso justo y adecuado para desfilar toda la prueba fuera de cualquier perjuicio e imparcialidad."*

No estamos de acuerdo.

Tanto la Quinta Enmienda de la Constitución de los Estados Unidos como la sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, disponen que nadie será puesto en riesgo de ser castigado dos veces por el mismo delito. Esta cláusula contiene varias protecciones o vertientes, a saber:

*"1. ulterior exposición después de una absolución de la misma ofensa;*

*2. ulterior exposición luego de convicción por la misma ofensa;*

*3. ulterior exposición luego de exposición por la misma ofensa,*

*4. castigos múltiples por la misma ofensa."*

En el presente caso estamos ante la tercera situación. Sobre este alcance, señala el profesor Chiesa que se deben atender tres consideraciones. Estas son:

*"1. ¿Cuándo se activa la protección; esto es, cuándo hubo exposición anterior?*

*2. ¿A instancias o solicitud de qué parte se puso fin al primer proceso?*

*3. ¿Qué razones hubo para poner fin al proceso sin absolución, ni convicción?"*

Sobre la primera consideración, se entiende que la protección se activa con el comienzo del juicio. *"En los casos por jurado, el juicio comienza al tomársele el juramento definitivo al jurado para oficiar la causa; en casos por tribunal de derecho al tomársele juramento al primer testigo".* Pueblo v. Martínez Torres, 126 D.P.R. 561, 568 (1990). En cuanto al segundo factor, cuando el acusado solicita la terminación del juicio, o no se opone a ella, se entiende que renuncia a la protección constitucional. Chiesa, pág. 412.

Esto nos lleva a la tercera consideración, en la cual debemos considerar si había una necesidad manifiesta para el juicio inconcluso. Citando los casos de *Illinois v. Somerville*, 410 U.S. 458 (1973), y *Arizona v. Washington, supra*, el Profesor Chiesa resume la doctrina de necesidad manifiesta (manifest necessity) en los

siguientes términos:

"*En suma, puede terminarse el juicio antes de absolución o convicción, aun sin anuencia, ni solicitud de la defensa, cuando hay 'necesidad manifiesta' para el juicio inconcluso, ya por irregularidad que impediría un veredicto justo e imparcial, o ya por quedar el ministerio público en un "no win situation", en el sentido de que una convicción sería revocada en apelación por efecto de la magnitud y circunstancias de la irregularidad.*" Chiesa, pág. 414.

En el presente caso, no hay duda que estamos ante una necesidad manifiesta para que concluyera el primer proceso que se celebrara contra el peticionario. La renuncia del juez, como igual sería su muerte o enfermedad, es una fuerza mayor que justifica que se inicie un nuevo proceso sin que se active la cláusula constitucional de doble exposición. No se adelantan los fines de la justicia si se permite que la falta del juez, por la razón que fuere, tenga como consecuencia que el acusado no sea juzgado debidamente por el delito cometido.

No erró el foro recurrido al ordenar un nuevo juicio. Más aún, su razonado dictamen persigue garantizar los mejores intereses del acusado ante su objeción a que otro juez sustituya al renunciante.

En consecuencia, se expide el auto y se confirma la Resolución recurrida. Se ordena la continuación inmediata de los procedimientos en el Tribunal de Primera Instancia.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General